# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TROLLEY BOATS, LLC,**
**AMPHIBIOUS PARTNERS,**
**LLC, LINDA COLLINS,**


**-vs-**                                     **Case No.  6:07-cv-1027-Orl-19UAM**

**CITY OF HOLLY HILL, FLORIDA,**
**CORPORAL GERALD POTASH,**
**STEVEN ALDRIDGE, JOHN DOE,**

                        **Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1.    The Motion to Dismiss and Incorporated Memorandum of Law in Support of Defendant The City of Holly Hill, Florida  (Doc. No. 24, filed Sept. 10, 2007);

2.    The Dispositive Motion to Dismiss or for Summary Judgment and Incorporated Memorandum of Law in Support of Defendants Sargent Stephen Aldridge and Corporal Gerald Potash (Doc. No. 25, filed Sept. 10, 2007);

3.    The Response to Motion to Dismiss of Defendant The City of Holly Hill, Florida and Incorporated Memorandum of Law of Plaintiffs (Doc. No. 33, filed Oct. 4, 2007);

4.    The Response to Motion to Dismiss/Motion for Summary Judgment of Defendants Corporal Gerald Potash and Sargent Stephen Aldridge and, in the Alternative, Request to Amend Complaint to Incorporate Facts Established in the Record of Plaintiffs (Doc. No. 34, filed Oct. 4, 2007);

5. The Notice of Filing Materials Filed in Support of Opposition to Motion to Dismiss/Motion for Summary Judgment of Defendants Sargent Stephen Aldridge and Corporal Gerald Potash of Plaintiffs (Doc. No. 35, filed Oct. 5, 2007); and

6. The Motion for Leave to File a Reply Memorandum to Plaintiffs' Response to Defendants' Motion to Dismiss/Motion for Summary Judgment of Defendants[1] (Doc. No. 37, filed Oct. 5, 2007).

## Background

Plaintiffs, Trolley Boats, LLC, Amphibious Partners, LLC and Linda Collins, filed a Complaint against Defendants, the City of Holly Hill, Florida, and Corporal Gerald Potash and Sergeant Steven Aldridge, two city law enforcement officers, alleging violations of their civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Doc. No. 1). Trolley Boats also filed a claim against Holly Hill under Florida law. (*Id.*) Plaintiffs' allegations are summarized below.

Until 2004, Trolley Boats was a member-managed LLC owned by Amphibious Partners and Donald and Gwendolyn Redman and managed by Donald Redman, Louis Steplock, Jr. and David Beagle. (*Id.* at ¶ 6-8). Redman ran the day-to-day operations of Trolley Boats pursuant to an employment agreement until his resignation in January 2004. (*Id.* at ¶ 9). After Redman's resignation, Trolley Boats' other managers, Steplock and Beagle, hired Thom Moss to run the day-to-day operations of the business. (*Id.* at ¶ 11). Redman devised a scheme to pressure Amphibious Partners to sell him its interest in Trolley Boats so that he could remove Amphibious Partners as an owner and Steplock and Beagle as members. (*Id.* at ¶¶ 14-15). For instance, Redman knew Amphibious Partners was interested in selling its interest in Trolley Boats but failed to disclose that

---

[1] This document was filed by all three defendants. (Doc. No. 37).

a third party offered to purchase Amphibious Partner's interest for its full asking price.  (*Id.* at ¶¶ 12-14).

On April 9, 2004, Redman informed Holly Hill that he was in a dispute over ownership of Trolley Boats and asked for Holly Hill's assistance in removing Thom Moss and Plaintiff Linda Collins, Trolley Boats' employees who were loyal to Amphibious Partners, from Trolley Boats' office.  (*Id.* at ¶¶ 15-16).  Holly Hill did not seek and Redman did not provide any documentation indicating that he had an exclusive right to control the premises.  (*Id.* at ¶ 16).  Holly Hill sent Defendant Potash and another unnamed officer to the Trolley Boats' facility to tell Moss and Collins to leave the premises.  (*Id.* at ¶ 17).  Moss and Collins tried to prove that Redman did not have an exclusive right to possess the premises, but Potash and the other officer threatened to arrest them if they did not leave.  (*Id.*)  After their removal, Moss and Collins approached Holly Hill and again attempted to prove that Redman was not entitled to exclusive possession of the premises.  (*Id.* at ¶ 19).  However, Holly Hill "ratified [the] police action without following proper procedures that protect the rights of citizens from unlawful taking" and warned them that they, or any other representative of Amphibious Partners, would be arrested for trespass if they attempted to re-enter the property.  (*Id.* at ¶¶ 20-21).  According to Plaintiffs, Holly Hill's actions gave Redman exclusive control and possession of the premises and effectively dispossessed Amphibious Partners of its interest in Trolley Boats without due process of law.  (*Id.* at ¶¶ 18, 22).

In December 2004, in response to Redman's actions and Holly Hill's arrest threats, Steplock broke into the Trolley Boats' facility.  (*Id.* at ¶ 25).  Although Holly Hill had previously insisted that the dispute was a civil matter, the City, acting through Defendant Aldridge, provided Redman with wiretap equipment to record his conversations with Steplock.  (*Id.* at ¶¶ 26, 37).  Holly Hill

eventually transcribed the tapes and provided them to Redman.  (*Id.* at ¶ 26).  No wiretap was ever authorized.  (*Id.*)

Count I of the Complaint asserts a Section 1983 claim against all Defendants alleging that their actions deprived Plaintiffs of their rights to Trolley Boats' property without due process of law and subjected them to an unreasonable seizure in violation of their Fourth and Fourteenth Amendment rights.  (*Id.* at  ¶¶ 28-31, 38).  Plaintiffs contend that Defendants' actions caused them to suffer significant damages.  (*Id.* at ¶ 43).

In Count II, Trolley Boats asserts a tortious interference with contract claim against Holly Hill.  (*Id.* at ¶ 45).  It alleges that on or about April 9, 2004, Plaintiffs provided Holly Hill with Trolley Boats' operating agreement and warned Holly Hill that its actions were interfering with its contractual rights.  (*Id.* at ¶ 48).  Holly Hill's decision to put Redman in exclusive control of the Trolley Boats' property and continued threats to arrest Plaintiffs' representatives if they entered the property deprived Plaintiffs of their property.  (*Id.* at ¶¶ 49-51).  The city's actions gave Redman exclusive control over the Trolley Boats property and allowed Redman to damage Trolley Boats' business.  (*Id.* at ¶¶ 52-53).

Defendant Holly Hill moves to dismiss both counts of Plaintiffs' Complaint.  (Doc. No. 24). Defendants Potash and Aldridge move to dismiss Count I of the Complaint and attach affidavits from each Defendant as well as a state court order.  (Doc. No. 25).  Plaintiffs oppose both motions. (Doc. Nos. 33, 34).  In their Response to the Motion of Defendants Potash and Aldridge, Plaintiffs attach over 180 pages of supporting documents.  (Doc. No. 34).  After receiving Plaintiffs' filing, all three Defendants jointly filed a Motion for Leave to File a Reply to Plaintiffs' Response.  (Doc. No. 37).

**Standard of Review**

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 12(d); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

**Analysis**

**I.      Consideration of Matters Outside the Pleadings**

Defendants Potash and Aldrich's Motion to Dismiss introduced matters outside the allegations of the Complaint. (Doc. Nos. 25-2, 25-3, 25-4). Plaintiffs' response included over 180 pages of additional documents. (Doc. No. 35). Under Federal Rule of Civil Procedure 12(b)(6), the Court may consider matters outside of the pleadings if it treats the motion to dismiss "as one for summary judgment." Fed. R. Civ. P. 12(d). However, the Court must then dispose of the motion as provided in Rule 56 and give all the parties a reasonable opportunity to present all material pertinent to such a motion. *Id.* If the motion to dismiss is treated as one for summary judgment, it may operate as an adjudication on the merits. *Griffith v. Wainwright*, 772 F.2d 822, 825 n.4 (11th Cir. 1985).

The decision to convert a motion to dismiss into one for summary judgment is within the discretion of the Court. *E.g., Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985)

("The court has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a 12(b)(6) motion."). *See also* Fed. R. Civ. P. 12(d) (noting that the Court may decide to exclude matters outside the allegations of the pleadings). However, a motion to dismiss should only be treated as one for summary judgment if the record is fully developed and the non-moving party was given adequate notice of the Court's decision. *See Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003) (noting that granting summary judgment without notice is only proper if "a legal issue has been fully developed, and the evidentiary record is complete"); *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002) ("The district court is required to notify the parties that the motion has been converted, and give the parties 10 days in which to supplement the record. . . . This Circuit has consistently interpreted the notice rules strictly." (internal citations omitted)); *Burton v. City of Belle Glade,* 178 F.3d 1175, 1203-04 (11th Cir. 1999) ("A district court possesses the power to enter summary judgment *sua sponte* provided the losing party was on notice that she had to come forward with all of her evidence. . . . [T]his notice provision is not an unimportant technicality, but a vital procedural safeguard to a party's right to offer the best defense to any challenge." (internal quotations omitted)).

The record in the instant case does not appear to be fully developed. All three Defendants in their Motion for Leave to Reply to Defendants Potash and Aldridge's Motion allege that many of the exhibits included were never previously disclosed to them. (Doc. No. 37, ¶ 1). Moreover, Plaintiffs themselves admit that "discovery is in its initial stages, [and] it is not clear how far the officers went to assist Don Redman." (Doc. No. 34, p. 7). Therefore, the Court will limit its analysis to the four corners of the Complaint and declines to convert the pending motion to dismiss into a motion for summary judgment.

## II.     Plaintiffs' Section 1983 Claims

Section 1983 provides a remedy for the deprivation, under color of state of authority, of a right guaranteed by the "Constitution and laws" of the United States.  42 U.S.C. § 1983.  Count I of the Complaint asserts one Section 1983 claim on behalf of all three Plaintiffs against all three Defendants.  (Doc. No. 1).

### A.     Plaintiffs' Section 1983 Claim Against Defendant Aldridge

Plaintiffs assert a claim against Defendant Aldridge because Defendant Aldridge provided Redman with wiretap equipment to record Redman's conversations with Steplock after Steplock broke into the Trolley Boats' facility.  (Doc. No. 1, ¶¶ 25, 26, 37).  Plaintiffs contend that Defendant Aldridge's actions violated their Fourth and Fourteenth Amendment rights.[2]  (*Id.* at ¶ 38).  Defendant Aldridge contends that Plaintiffs lack standing to assert their claims against him.  (Doc. No. 25, pp. 8-9).

"[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."  *Dillard v. Baldwin County Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000) (citations omitted).  In "ruling on a motion to dismiss for want of standing, [the Court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Warth v. Seldin,* 422 U.S. 490, 501 (1975).

The constitutional requirements of standing are: (1) an injury in fact, which is "concrete and

---

[2]     The allegations of the Complaint do not explain how Defendant Aldridge violated Plaintiffs' Fourth or Fourteenth Amendment rights. (Doc. No. 1, ¶¶ 25, 26, 37). Because the only allegations which reference Defendant Aldridge discuss his involvement in the decision to wiretap Steplock without obtaining a warrant, the Court construes Plaintiffs' claim as alleging that Defendant Aldridge violated Plaintiffs' Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures.  (*See id.*)

particularized" and "actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). The party invoking federal jurisdiction has the burden of proving the constitutional standing requirements are met. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-04 (1998).

With respect to Defendant Aldridge, Plaintiffs allege their injuries in fact are deprivations of their Fourth and Fourteenth Amendment Rights. According to the allegations of the Complaint, Sergeant Aldridge gave Redman recording equipment to record Redman's conversations with Steplock. (Doc. No. 1, ¶¶ 26, 37). The recordings were conducted without a proper warrant. (*Id.*) The Complaint does not state what occurred in the recorded conversations. All the Complaint alleges is that: (1) Steplock broke into the Trolley Boats premises and took Trolley Boats' property because he was denied access; (2) Redman recorded his conversations with Steplock; and (3) Steplock was a Trolley Boats manager. (*Id.* at ¶¶ 25, 26, 37). There are no allegations that the recorded conversations discussed Trolley Boats or any of the other Plaintiffs. Moreover, there are no allegations with respect to where the alleged conversations occurred. Therefore, the Complaint merely alleges that Steplock's rights were violated.

An individual's Fourth Amendment right to be free from unreasonable searches and seizures "is a personal right which cannot be asserted vicariously." *Crosby v. Paulk*, 187 F.3d 1339, 1346 n. 10 (11th Cir. 1999). An individual has no standing to assert a Fourth Amendment violation unless he "has a cognizable property interest in the place or thing searched, . . . [or] was present at the time

of the search." *United States v. Hunt*, 505 F.2d 931, 938 (5th Cir. 1974).[3]  Accordingly, the fact that

one business partner's Fourth Amendment rights are violated does not give a different partner

standing to challenge the violation "solely on the basis of the partnership relation." *Id.* at 939.

Moreover, a mere financial interest in property searched or seized does not create standing to assert

a Fourth Amendment violation.  *United States v. McConnell*, 500 F.2d 347, 348 (5th Cir. 1974).

Because the Complaint merely alleges that Steplock's rights were violated, there is no basis

to find that any of the three Plaintiffs have standing to assert that the wiretap violated their Fourth

or Fourteenth Amendment rights.  Steplock is not a party to the suit.  Steplock's status as a manager

of Trolley Boats does not give Trolley Boats a sufficient interest to assert a Fourth Amendment

claim based on the violation of Steplock's rights.  *Flavorland Indus., Inc. v. United States,* 591 F.2d

524, 525 (9th Cir. 1979) (corporation does not automatically have standing to assert Fourth

Amendment rights of employees); *McConnell*, 500 F.2d at 348 (employer had no standing to

challenge search of employee's vehicle even though employer leased vehicle for employee); *OKC

Corp. v. Williams,* 489 F. Supp. 576, 582 (N.D. Tex. 1980) (A corporation "has no standing to assert

the constitutional rights of its employees."); *cf. United States v. Bush*, 582 F.2d 1016, 1018-19 (5th

Cir. 1978) (corporation has standing to challenge search or seizure of its own property, and interest

of corporate officer in corporation is insufficient to confer standing to challenge search of corporate

property).  Thus, Amphibious Partners' status as an owner of Trolley Boats is also insufficient to

confer standing to assert a Fourth Amendment claim based on the alleged violation of Steplock's

rights. Finally, Plaintiff Collins was merely an employee of Plaintiff Trolley Boats.  Therefore, there

---

[3]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh
Circuit adopted the decisions of the United States Court of Appeals for the Fifth Circuit that were
handed down prior to October 1, 1981 as binding precedent.

is no basis to find that Collins has standing to assert that her rights were violated because of Defendant's decision to wiretap Steplock. Thus, Plaintiffs' Section 1983 claims against Defendant Aldridge must be dismissed.

**B.      Plaintiffs' Section 1983 Claim Against Defendant Potash**

Plaintiffs assert that Defendant Potash violated their Fourth and Fourteenth Amendment rights by assisting Redman in removing Moss and Collins from the premises. (Doc. No. 1, ¶¶ 17, 32). Although Moss and Collins attempted to prove that Redman did not have the right to exclusive possession or control of the premises, Defendant Potash told them to leave, escorted them off the property, and threatened to arrest them if they returned. (*Id.*) Specifically, Plaintiffs contend that Defendant Potash "should have known [that] the failure to obtain even minimal evidence of Redman's rights to exclusive control would result in the deprivation of plaintiffs' constitutional rights." (*Id.* at ¶ 33). The removal of Moss and Collins deprived Plaintiffs of their personal property on the premises as well as their rights in management of Trolley Boats and their employment opportunities. (*Id.* at ¶ 36).

The Eleventh Circuit applies a heightened pleading standard to Section 1983 claims against defendants such as government officials in their individual capacities who can assert a qualified immunity defense.[4] *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004). In order to state a claim, a plaintiff must "allege with some specificity the facts which make out its claim." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998). In such cases, a plaintiff must allege a violation of a "clearly federal established right." *Id.* at 1366-67.

---

[4]      Defendant Potash asserts a qualified immunity defense in his Motion to Dismiss. (Doc. No. 25, pp. 12-16).

Plaintiffs have a clearly established constitutional right to be free from illegal seizures. The Fourth Amendment protects people against "unreasonable seizures of their persons, houses, papers, and effects." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 62 (1992) (internal quotations omitted). A seizure occurs when there is "some meaningful interference with an individual's possessory interests in that property." *Id.* at 63 (internal quotations omitted). A seizure can occur when the police enter private property to effectuate an eviction. *Id.* at 69; *Thomas v. Cohen*, 304 F.3d 563, 570 (6th Cir. 2002). Plaintiffs pled specific facts which indicate that Defendant Potash's removal of Moss and Collins from the Trolley Boats premises and threats to arrest them if they returned illegally deprived them of their property. (Doc. No. 1, ¶¶ 17-18, 32-33, 36). Therefore, Plaintiff have stated a Section 1983 claim against Defendant Potash, and his Motion to Dismiss must be denied.

### C.      Plaintiffs' Section 1983 Claim Against Defendant Holly Hill

Under Section 1983, a municipality cannot be held liable for the actions of its employees on a respondeat superior basis. *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). To state a cause of action against a municipality, a plaintiff must allege: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Section 1983 claims against municipalities, which cannot raise qualified immunity as a defense, must only meet the basic requirements of Rule 8(a) and are not subject to a heightened pleading standard. *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004).

Plaintiffs allege that Holly Hill's actions violated their Fourth and Fourteenth Amendment rights because they were deprived of their property without due process and subjected to an

unreasonable search and seizure.  (*See id.* at ¶ 31).  Plaintiffs' Section 1983 claims against Holly Hill revolve around the following two distinct events: (1) the actions by Holly Hill and Defendant Potash in removing Moss and Collins from Trolley Boats' property and placing Redman in control of the premises; and (2) the actions by Holly Hill and Defendant Aldridge in assisting Redman in wiretapping Steplock.  (*See* Doc. No. 1).

Plaintiffs argue that Holly Hill's actions were the result of a municipal policy that allowed police to deprive citizens of their property without due process.  (*Id.* at ¶¶ 36, 40).  Plaintiffs specifically aver that:

> Holly Hill has (a) policy, custom or practice of removing persons from real property where no threat of bodily harm is evident based upon the unverified verbal statement of one individual asserting there is a private dispute without regard to the second individual's rights of access, possession and use of the real property and without other process afforded by law; and, (b) a policy, custom or practice of maintaining such deprivation by continuing threat of arrest.

(Doc. No. 1, ¶ 40).  Plaintiffs allege that this municipal policy was enforced against them because Defendant Potash and his supervisor, John Doe, whose decisions establish municipal policy, never investigated whether Redman had a right to exclusive control of the premises and threatened to arrest Plaintiffs or their representatives if they entered the Trolley Boats' property.  (*Id.* at ¶¶ 17, 33-36).

### 1.    Plaintiffs' Claims Against Holly Hill With Respect to the Eviction

Plaintiffs assert a procedural due process claim under the Fourteenth Amendment.  For the purposes of a Section 1983 claim, a procedural due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990); *see also McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994).  Plaintiffs allege that the eviction deprived them of their property rights to the Trolley

Boats' business, rights to continued employment, and personal property on the premises. (Doc. No. 1, ¶¶ 30-31). Additionally, Plaintiffs allege that they repeatedly attempted to show Holly Hill that Redman did not have an exclusive right to possess the property, but Holly Hill continued to threaten to arrest them if they returned to the property. (*E.g., id.* at ¶¶ 17, 19, 21, 22). Thus, Plaintiffs assert that their eviction constituted an illegal seizure in violation of the Fourth Amendment because they were deprived of access to Trolley Boats' property and their personal property on the premises. (*Id.* at ¶ 30).

The Fourth Amendment protects people against "unreasonable seizures of their persons, houses, papers, and effects." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 62 (1992) (internal quotations omitted). A seizure occurs when there is "some meaningful interference with an individual's possessory interests in that property." *Id.* at 63 (internal quotations omitted). A seizure can occur when the police enter private property to effectuate an eviction. *Id.* at 69; *Thomas v. Cohen*, 304 U.S. 563, 570 (6th Cir. 2002). Thus, Plaintiffs have properly pled constitutional violations.

Plaintiffs allege that Holly Hill had a municipal policy of evicting citizens from private property without investigating whether those citizens had a right to access the property. (Doc. No. 1, ¶ 40). Plaintiffs further allege that Holly Hill had a policy of keeping the same citizens off of the property by threatening them with arrest. (*Id.*) Thus, Plaintiffs claim that Holly Hill had a municipal policy of depriving citizens of their property without due process of law and subjecting them to illegal searches and seizures. Municipal liability must be premised on: "(1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994).

A plaintiff who alleges the existence of a municipal policy must allege that the decision was made by a "final policymaker" under the relevant state's law.  *Id.*  Municipal liability cannot be premised upon decisions by "principal" policymakers.  *Id.*  "[F]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review."  *Quinn v. Monroe County*, 330 F. 3d 1320, 1325 (11th Cir. 2003) (internal quotations omitted).  Plaintiffs allege that Defendant Potash's supervisor, John Doe, was a policymaker whose decisions "reflect[] the municipality's decision." (Doc. No. 1, ¶ 35).  Plaintiffs contend that John Doe sanctioned Potash's actions.  (*Id.* at ¶¶ 17, 36).  Construing all inferences in favor of Plaintiffs, the Court finds that Plaintiffs have the alleged the existence of a formal municipal policy.

Finally, in order to sustain a claim for municipal liability, a plaintiff must allege that the municipal policy caused the deprivation of his rights.  *McDowell*, 392 F.3d at 1289.  Municipal liability arises if the "unconstitutional action is taken to implement or execute a policy statement, ordinance, regulation or officially adopted and promulgated decision."  *Trezevant v. City of Tampa*, 741 F.2d 336, 340 (11th Cir. 1984).  Plaintiffs contend that Holly Hill "authorized and/or ratified [the] police action without following proper procedures that protect the rights of citizens. . . ." (*Id.* at ¶ 20).  Additionally, Plaintiffs allege that John Doe, a policymaker, authorized Holly Hill police officers to take property without regard to individuals' rights. (Doc. No. 1, ¶ 35).  Plaintiff's further allege that John Doe confirmed Corporal Potash's actions, which caused the deprivation of Plaintiff's rights by enacting an illegal seizure and depriving them of their property without due process. (*Id.* at ¶ 36).  Thus, Plaintiffs have alleged sufficient facts to establish that Holly Hill's policy caused the violation of their rights.  Therefore, Holly Hill's Motion to Dismiss Plaintiffs

Section 1983 claim with respect to the eviction must be denied.

### 2.      Plaintiffs' Claims Against Holly Hill With Respect to the Wiretap

Plaintiffs allege that their Fourth and Fourteenth Amendment rights were violated because the City, acting through Sargent Aldridge, provided Redman with wiretap equipment to record his conversations with Steplock, albeit that the City insisted that the dispute was a civil matter.  (Doc. No. 1, ¶¶ 26, 37).  Holly Hill never obtained a warrant or other authorization for such wiretap.  (*Id.* at ¶ 26).  Holly Hill later transcribed the recordings for Redman.  (*Id.*)  Plaintiffs allege that Holly Hill's decision to illegally wiretap Steplock violated their constitutional rights.  (*Id.* at ¶ 38).

Plaintiffs' allegations are insufficient to state a Section 1983 claim with respect to the wiretap because the City's actions do not fall within the purview of Plaintiff's alleged municipal policy or custom.  The only municipal policy or custom alleged is that:

> Holly Hill has (a) policy, custom or practice of removing persons from real property where no threat of bodily harm is evident based upon the unverified verbal statement of one individual asserting there is a private dispute without regard to the second individual's rights of access, possession and use of the real property and without other process afforded by law; and, (b) a policy, custom or practice of maintaining such deprivation by continuing threat of arrest.

(Doc. No. 1, ¶ 40).  Therefore, Plaintiffs Section 1983 claim against Holly Hill remains pending only to the extent that they are based on Holly Hill's decision to evict Plaintiffs from the Trolley Boats premises.

### III.     Trolley Boats' Tortious Interference Claim Against Defendant Holly Hill

In order to prevail on a claim for tortious interference with contract under Florida law, a plaintiff must establish the: (1) existence of a contract; (2) defendant knew of the contract; (3) defendant intentionally procured the contract's breach; (4) an absence of any justification or privilege; and (5) damages resulted from the breach.  *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544

(Fla. 5th DCA 1985).  A plaintiff has no standing to enforce a tortious interference with contract if the contract alleged does not afford him legal rights.  *See Davies v. Afilias Ltd.*, 293 F. Supp. 2d 1265,  1269 (M.D. Fla. 2003); *Procacci v. Zacco*, 402 So. 2d 425, 426 (Fla. 4th DCA 1981).

Trolley Boats alleges that Holly Hill tortiously interfered with its operating agreement by threatening to arrest plaintiffs if they entered the premises.  (Doc. No. 1, ¶¶ 45, 50).  However, Trolley Boats fails to allege that it was a party to its own operating agreement.  (*Id.* at ¶¶ 6, 8).  According to the allegations of the Complaint, the only parties to the operating agreement were the Redmans, Steplock and Beagle.  (*Id.*)  Although Trolley Boats alleges that it was injured by Holly Hill's actions, the allegations are insufficient to indicate that Trolley Boats has standing to assert its tortious interference with contract claim because it is not clear that the operating agreement affords Trolley Boats legal rights.  *Cf. Muravchick v. United Bonding Ins. Co.*, 242 So. 2d 179, 180 (Fla. 3d DCA 1970) (per curiam) (third party has no standing to maintain a cause of action upon a contract merely because it derives incidental or consequential benefit from its enforcement); *C. & H. Contractors, Inc. v. McKee*, 177 So. 2d 851, 853 (Fla. 2d DCA 1965)("Contracts of such promoters are not enforceable against a corporation unless such contracts are subsequently ratified either expressly or by implication by the corporation" [and] "[a] corporation may become liable on a contract made prior to the existence of the corporation if it subsequently ratifies or adopts the contract either expressly or by implication.")

Florida recognizes a cause of action for tortious interference with a business relationship if the plaintiff can establish: (1) the existence of a business relationship; (2) defendant knew of the relationship; (3) defendant intentionally and unjustifiedly interference with the relationship; and (4) plaintiff was damaged as a result of the breach of the relationship.  *Ethan Allen, Inc. v. Georgetown*

-16-

*Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).   A tortious interference with business relationship claim "need not be evidenced by an enforceable contract."  *Id.*  "However, the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights."  *Id.* (internal quotations omitted).  Although Plaintiff's factual allegations could be construed as an attempt at asserting a claim for tortious interference with a business relationship, such claim has not been plead and cannot be considered.  Therefore, Holly Hill's Motion to Dismiss Count II must be granted.

### Conclusion

Based on the foregoing:

1. Defendant Holly Hill's Motion to Dismiss (Doc. No. 24) is **DENIED** with respect to Count I and **GRANTED** with respect to Count II;

2. Defendant Potash's Motion to Dismiss (Doc. No. 25) is **DENIED**;

3. Defendant Aldridge's Motion to Dismiss (Doc. No. 25) is **GRANTED**; and

4. Defendants' Motion for Leave to Reply (Doc. No. 37) is **DENIED AS MOOT.**

Plaintiffs have leave of Court to file an Amended Complaint which comports with the provisions of this Order within ten (10) days from the date below.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 7, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

-17-