**TROLLEY BOATS, LLC,**
**AMPHIBIOUS PARTNERS, LLC,**
**AMPHIBIOUS ATTRACTIONS, LLC,**
**AMPHIBIOUS ATTRACTIONS OF**
**DAYTONA, LLC, A. LOUIS**
**STEPLOCK, JR., DAVID BEAGLE,**
**LINDA COLLINS,**

                 Plaintiffs,

-vs-                                          **Case No. 6:07-cv-1027-Orl-19GJK**

**CITY OF HOLLY HILL, FLORIDA,**
**GERALD POTASH, JOHN DOE,**

                 Defendants.

_____

# ORDER

      This case comes before the Court on the limited remand issued by the Eleventh Circuit Court of Appeals. *Trolley Boats v. Amphibious Attractions, LLC.*, Case No. 08-11043, slip op. at *1-9 (11th Cir. Jan. 28, 2009).

## Background

      This Court previously denied Defendant Officer Gerald Potash's Motion to Dismiss, finding that Potash was not entitled to qualified immunity at the pleading stage. (Doc. No. 43, filed Jan. 8, 2008.) Soon after, Potash appealed to the Eleventh Circuit. (Doc. No. 46, filed Jan. 28, 2008.) On appeal, the Eleventh Circuit determined that this Court's Order was deficient in several respects. *Trolley Boats*, slip op. at *2-9. Although the U.S. Supreme Court recently concluded that courts need not apply both prongs of the qualified immunity analysis if dismissal is warranted by either

prong, *Pearson v. Callahan*, 129 S. Ct. 808, 818-19 (2009), it did not dispense with the requirement that the lower courts elucidate constitutional guidelines. *Trolley Boats*, slip. op. at *6-7. In rejecting Officer Potash's qualified immunity defense, this Court did not sufficiently flesh out its conclusions that Potash violated the Fourth Amendment's right to be free from unlawful seizures and that a reasonable officer in Potash's position would know he was violating a clearly established right or rights. *Id.* at *7-8. Specifically, this Court failed to: (1) determine whether the seizure of Trolley Boats' property was "unreasonable" in light of Fourth Amendment jurisprudence; and (2) adequately compare the allegations in this case to the relevant United States Supreme Court, Eleventh Circuit, and Florida Supreme Court case law. *Id.* In light of these inadequacies, the Eleventh Circuit concluded that the Court did not "adequately address the legal standard for qualified immunity" and remanded "for the limited purpose of providing the district court with the opportunity to expand its qualified immunity analysis."[1] *Id.*

Upon expanding this analysis, the Court determines that Plaintiffs have failed to demonstrate that Potash violated a clearly established right, and Potash therefore is entitled to qualified immunity under the facts alleged in the Complaint.

---

[1] This Court previously declined to convert Potash's motion into a motion for summary judgment, even though Potash attached an affidavit to his Motion and Plaintiffs responded with additional evidence. (Doc. No. 43 at 6.) In making this decision, the Court observed that the record in this case was not fully developed. (*Id.*) On appeal, the Eleventh Circuit noted that the Court limited its analysis to the four corners of the Complaint. *Trolley Boats*, slip op. at 4 & n.2. However, the Eleventh Circuit did not conclude that this decision constituted an error. *See id.* Given the "limited" nature of the remand, particularly that this Court was directed to expand the legal analysis contained in its earlier decision, it does not appear that the Eleventh Circuit has directed or anticipated that this Court should convert Potash's Motion into a motion for summary judgment.

This case arises from the alleged intervention by several police officers and the City of Holly Hill in a dispute between managers of an LLC called Trolley Boats. Essentially, two of the managers, Louis Steplock and David Beagle, developed a dispute with a third manager, Donald Redman. (Doc. No. 1 ¶¶ 3-13.) Redman eventually resigned as a manager after Steplock and Beagle confronted him about accounting irregularities. (*Id.* ¶ 10) According to the Complaint, Redman thereafter decided to remove Steplock and Beagle as managers of Trolley Boats, in which Redman and his wife owned a 50% interest, and pressure Amphibious Partners, a limited liability company that owned the other 50% of Trolley Boats, to sell its interest to the Redmans below market value. (*Id.* ¶ 15.) To effect this plan, Redman went to city hall and told Holly Hill's city manager that he was involved in an ownership dispute over Trolley Boats and needed the City's assistance to remove several employees from the premises. (*Id.* ¶ 16.) Neither the city manager nor law enforcement "required that Redman provide any documentation to support the removal," and Redman never provided any such documentation. (*Id.*)

Eventually, the Redmans and the City of Holly Hill arranged for Officer Potash and a trainee to go to the Trolley Boats premises on April 9, 2004. (*Id.*) The officers told the two employees at the site, Linda Collins and Thom Moss, to leave immediately. (*Id.* ¶ 17.) In response, Moss and Collins told the officers that the Redmans did not have an exclusive right to possession of the premises and showed them documentation in support of their contention. (*Id.*) Nevertheless, Potash and the trainee threatened Moss and Collins with arrest, escorted them off the property, and warned them that they would be arrested at Redman's request if they returned. (*Id.*) In doing so, the officers "delivered to the Redmans possession and physical control of the premises and equipment, cash and

inventory of [Trolley Boats] which were on the premises, as well as the investment and assets of [Amphibious Partners] which were on the premises. (*Id.* ¶ 18.)

Count I of the Complaint is titled "Deprivation of Constitutional Rights," is brought against all Defendants, and alleges as follows. First, Plaintiffs explain that Trolley Boats, Amphibious Partners, and Linda Collins[2] had a right to possess Trolley Boats' premises, equipment, and assets. (*Id.* ¶ 30.) Thus, Plaintiffs were entitled to "due process of law prior to the deprivation of such rights and a protection against unreasonable seizures of property under the Fourth and Fourteenth Amendments . . . ." (*Id.* ¶ 31.) Next, the following facts are alleged:

> 32. Acting under color of state law and within the sphere of his official and individually capacity, Corporal Potash removed TB, AP and their employees, Moss and Collins, from the premises, and deprived them of their rights without due process of law in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and in an arbitrary and abusive manner.
>
> 33. The defendants did not require or request that Redman provide documentation to establish his right to exclusive control of the premises or the need for police action to gain exclusive control of the premises in what Redman described to the 1983 defendants as a "private matter." Corporal Potash and his supervisor John Doe knew or should have known the failure to obtain even minimal evidence of Redman's rights to exclusive control would result in the deprivation of plaintiffs' constitutional rights. Corporal Potash and his supervisor John Doe, acting in their individual and official capacities, created a defacto policy of permitting Don Redman to use the police as his private police force.
>
> 34. Further, the threat of arrest by Corporal Potash and the trainee gave exclusive control to a private citizen who had no right to exclusive control, constitutes police action which deprived plaintiffs of their rights. This deprivation of rights was pursuant to a defacto municipal policy, custom, practice or procedure, and was not random or unauthorized. The action was part of the training provided to the trainee.

(*Id.* ¶¶ 32-35 (punctuation and grammar as is contained in the original).)

---

[2] Additional plaintiffs, including Steplock, Beagle, and two other LLCs, were added to the suit after this Court ruled on Potash's Motion to dismiss. (Doc. No. 44, filed Jan. 17, 2008.)

In his Motion to Dismiss, Potash argues that the alleged deprivation of property must be understood as a procedural due process claim "which does not protect from the deprivation of rights, but only protects against an unfair process when depriving an individual of those rights." (Doc. No. 25 at 11 (citing *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). Potash contends that the state has an opportunity to cure a due process violation by providing a procedural remedy. (*Id.* (citing *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994))). Thus, to state a claim for a procedural due process violation, the plaintiff must allege the lack of such an opportunity in its complaint. (*Id.* (citing *Nuemont v. Monroe County*, No. 9910054CIVPAINE, 2003 WL 22466212, at *2-3 (S.D. Fla. Sept. 3, 2003))). Potash argues that the Complaint must be dismissed because it does not allege the lack of a post-deprivation remedy. (*Id.*)

Regarding qualified immunity specifically, Potash argues that he was acting within his discretionary duties because his actions were within the bounds of his authorized police duties. (Doc. No. 25 at 14.) Potash then contends that Plaintiffs' conclusory allegations, particularly that he deprived Plaintiffs "of their rights without due process of law," fail to meet the heightened pleading standard for section 1983 actions against individuals. (*Id.* at 15.) Finally, Potash argues that the facts alleged in Plaintiffs' Complaint do not establish that Potash violated a clearly established right. (*Id.* at 16 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).) According to Potash, the contours of Plaintiffs' Fourth and Fourteenth Amendment rights were "not so clear under these circumstances that any reasonable police officer would have recognized that issuing a trespass warning excluding Thom Moss and Linda Collins would amount to a violation of federal law." (*Id.*)

In their Response, Plaintiffs first argue that Potash is not entitled to qualified immunity with respect to their Fourth Amendment claim. Plaintiffs cite to *United States v. Jacobson*, 466 U.S. 109, 109 (1984), *Sodal v. Cook County, Ill.*, 506 U.S. 56, 56 (1992), and *Camera v. Municipal Court*, 387 U.S. 523, 528-29 (1967), to explain that the deprivation of a possessory right constitutes a seizure of property. (Doc. No. 34 at 9-12.) They next cite to *Bevan v. Scott*, No. 2:03-CV-500-FTM-29SPC, 2005 WL 2219433, at *11 (M.D. Fla. Sept. 13, 2005), and *Sprech v. Jensen*, 832 F.2d 1516, 1516 (10th Cir. 1987), as examples of unreasonable searches. (Doc. No. 34 at 10.) Finally, they cite *Booker v. City of Atlanta*, 776 F.2d 272, 272 (11th Cir. 1985), and *Lenz v. Winburn*, 51 F.3d 1540, 1540 (11th Cir. 1995), as law that prohibited Potash's conduct. (Doc. No. 34 at 10-12.)

Regarding their due process claim, Plaintiffs first cite to the Supreme Court's opinion in *Fuentes v. Shevin*, 407 U.S. 67, 67 (1972), for the general rule that the government may not take property without due process. (Doc. No. 34 at 12.) Plaintiffs then cite to *Abbot v. Latshaw*, 164 F.3d 141, 149 (3d Cir. 1998), for the more specific proposition that "it is not for law enforcement officers to decide who is entitled to possession of property." (Doc. No. 34 at 12.) Next, Plaintiffs cite to *Booker*, 776 F.2d at 274, arguing that a police officer's arrival on scene with a party seeking to repossess property gives the possessor a cachet of legality. (Doc. No. 34 at 12.) Thus, Plaintiffs argue, such "interaction and aid" is sufficient to constitute state action. (*Id.*) Turning to the facts of this case, Plaintiffs explain that Potash "clearly sided with Redman, a former [Trolley Boats] manager, acting without authority, to the detriment of [P]laintiffs." (*Id.* at 13.) In addition, "Potash refused to heed the statements of the company president and office manager that Redman was acting without authority." (*Id.*) Finally, Plaintiffs cite to *Marcus v. McCollum*, 394 F.3d 813, 822 (10th Cir. 2004), arguing that issues of fact preclude a grant of qualified immunity when it is unclear

whether police officers simply "kept the peace" or actively aided a complaining party, thereby intervening in a private matter. (*Id.* at 14.)

**Analysis**

As explained in the Eleventh Circuit's Opinion, "[q]ualified immunity represents an accommodation between two conflicting concerns – the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation." *Trolley Boats*, slip op. at *5 (quoting *GJR Invests., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998)) (internal quotation marks omitted). "The immunity protect[s] from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)) (internal quotation marks omitted; alteration by *Trolley Boats* court).

The initial step in the qualified immunity analysis is to determine whether the government actor is acting within his discretionary authority. *Gonzales*, 325 F.3d at 1234. "Once the defendants have established that they were acting within their discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is inappropriate." *Gonzales*, 325 F.3d at 1234. To do so, the plaintiffs must demonstrate that: (1) a constitutional right has been violated; and (2) the right was clearly established by the law at the time of the violation. *Trolley Boats*, slip op. at *6 (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).

Under this second prong, a right is "clearly established" if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at *8 (citing *Saucier*, 533 U.S. at 202). Accordingly, an officer violates a clearly established right when he or she takes

actions that: (1) have previously been ruled unconstitutional in a factually similar case; or (2) are so egregious that the government actor must be aware that he is acting illegally. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955-56 (11th Cir. 2003). Because an officer cannot be expected "to sort out the law of every jurisdiction in the country," only the cases of the United States Supreme Court, the Eleventh Circuit, and the highest court of the state in which the case arose can "clearly establish" law. *Id.* at 955.

## I. Fourth Amendment Rights

Turning to the specific constitutional rights at issue, "the Fourth Amendment, made applicable to the States by the Fourteenth, provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .'" *Sodal*, 506 U.S. at 61 (quoting U.S. Const. amend IV). "A seizure of property . . . occurs when there is some meaningful interference with an individual's possessory interests in that property." *Id.* (citation and internal quotation marks omitted). "[T]he reasonableness determination . . . reflect[s] a careful balancing of governmental and private interests." *Id.* at 71. In the non-investigative context, a seizure of property by police is typically reasonable when done pursuant to a court order. *See id.* (citing *Specht*, 832 F.2d at 1516; *Fuentes*, 407 U.S. at 67). By contrast, a seizure is typically unreasonable where the officers "know[] that it is contrary to the law, or proceed to seize property in the absence of objectively reasonable grounds for doing so." *See id.*

As explained above, the Court's first task is to determine whether, under the facts alleged, Potash actually violated Plaintiffs' constitutional rights. According to the Complaint, Redman enlisted Potash to seize Trolley Boats' production facility and various chattels without a court order.

(Doc. No. 1 ¶ 17.) Further, no one from the Holly Hill government required Redman to submit documentation showing a right to exclusive possession of Trolley Boats' property. (*Id.* ¶ 16.) By contrast, Moss and Collins produced documentation disproving Redman's right of exclusive possession, but Potash ignored them. (*Id.*) Assuming these allegations are true, Potash violated Plaintiffs' Fourth Amendment rights.[3] Essentially, Plaintiffs allege that Potash was called upon to decide who had possessory rights in a piece of property, and Potash inexplicably chose to ignore one side's documentation and award possession to the side with no proof of its claim. Because, under these alleged facts, Potash lacked both a court order and "objectively reasonable grounds" for seizing the Trolley Boats facility, his actions constituted an unreasonable, and therefore unlawful, seizure under the Fourth Amendment.[4] *Bevan*, 2005 WL 2219433, at *11 (finding that a sheriff's instruction to his deputy "to remove the trailer, in the absence of an authorizing court order, legal process, or an applicable exception to the warrant requirement, was unreasonable under the circumstances" and therefore violated the Fourth Amendment); *see also Sodal*, 506 U.S. at 72 ("[W]e doubt that the police will often choose to further an enterprise knowing that it is contrary to the law, or proceed to seize property in the absence of objectively reasonable grounds for doing so."). Critically, Potash was not merely keeping the peace; according to the Complaint, he entered

---

[3] Potash does not raise the issue of whether Trolley Boats and Amphibious Partners have standing to assert a Fourth Amendment challenge based on his alleged seizure of their property. *See, e.g.*, *United States v. Brodie*, 250 F. Supp. 2d 462, 464 (E.D. Pa. 2002) (concluding that a corporation had standing to assert a Fourth Amendment violation related to the seizure of audio tapes that it owned). He also does not raise the issue of whether Collins lacked a cognizable interest in Trolley Boats' property. *See, e.g.*, *Williams v. Kunze*, 806 F.2d 594, 599-600 (5th Cir. 1986) (explaining that an employee must have a legitimate expectation of privacy in the seized corporate property to support a Fourth Amendment challenge).

[4] The limitation on considering case law from district courts and other circuits applies to the second prong of the qualified immunity analysis. *See Thomas ex. rel Thomas*, 323 F.3d at 953-955.

the premises, removed Collins and Moss, and awarded possession to Redman. Thus, the alleged facts differ from the line of cases which permit law enforcement officers to remain neutral and "keep the peace" during a private repossession. *C.f. Cofield v. Randolph County Comm'n*, 90 F.3d 468, 471 (11th Cir. 1996) (finding that an officer's mere presence during a repossession did not establish that the officer was an active participant). Here, Potash is alleged to have played the role of both adjudicator and enforcer.

Nevertheless, Potash is entitled to qualified immunity unless he violated Plaintiffs' clearly established rights. Plaintiffs have not presented a United States Supreme Court, Eleventh Circuit, or Florida Supreme Court case finding a Fourth Amendment violation under circumstances similar to those alleged in the Complaint. As the Eleventh Circuit explained in its Opinion, the facts of *Sodal* are "fairly distinguishable" from this case. *Trolley Boats*, slip op. at *8 n.4. There, the law enforcement agency permitted a landlord to physically remove a mobile home that was, at the time, the subject of an eviction proceeding between the home owner and the mobile home park. *Sodal*, 506 U.S. at 58-59. The police knew that this proceeding was underway, and therefore they also knew that the parties' respective possessory rights had not yet been determined. Nevertheless, they warned the homeowner not to interfere with the unlawful removal. *Id.* at 59.

In contrast, under the facts alleged in the Complaint, Potash did not actually know who was entitled to possess the property at issue. As explained above, he was faced with competing claims of a right to possess, and he chose the side which provided no documentation for proof of a possessory claim over the side that provided documentation. At first blush, this series of allegations appears to support an inference that Potash had knowledge of the parties' respective possessory interests, which was the basis for the Court's initial opinion. On closer review, however, Plaintiffs

omit several key facts necessary to support such an inference. For instance, Plaintiffs did not specify the documentation that Collins and Moss provided, and even if they had, Plaintiffs did not explain how such documentation established that Potash knew Redman lacked the right to exclusively possess the Trolley Boats premises. To the extent an inference of knowledge could be drawn from the alleged facts, the inference would require a generous construction of the Complaint that goes beyond this Court's role in construing section 1983 claims subject to the heightened pleading standard. *See GJR Invs., Inc.*, 132 F.3d at 1366-67. Thus, because it is not alleged that Potash knew in actuality that Redman lacked a right to exclusively possess the Trolley Boats premises, *Sodal* did not provide fair warning to Potash that his conduct was unlawful. *Trolley Boats*, slip op. at *8 n.4.

The other cases on which Plaintiffs rely are similarly distinguishable. Plaintiffs cite to the United States Supreme Court's decisions in *Jacobson*, 466 U.S. at 109, and *Camera*, 387 U.S. at 523, for the general rules that (1) a seizure occurs when there is a meaningful interference with one's possessory interest in property; and (2) the Fourth Amendment protects individuals against arbitrary invasion by government officials. (Doc. No. 34 at 9-10.) Neither case addresses the situation Potash confronted. *See Jacobsen*, 466 U.S. at 111-12 (concerning the warrantless seizure of a package containing cocaine); *Camera*, 387 U.S. at 525 (determining whether a law which required landlords to allow warrantless housing code inspections was constitutional). Plaintiffs' citations to *Bevan v. Scott*, 2005 WL 2219433, and *Sprech*, 832 F.2d at 1516, are to decisions from the Middle District of Florida and the Tenth Circuit, respectively. Thus, these cases do not constitute clearly established law and therefore could not have provided Potash with notice that his actions were unlawful.

This leaves Plaintiffs' citations to the Eleventh Circuit's decisions in *Booker*, 776 F.2d at 272, and *Lenz*, 51 F.3d at 1540. *Booker* concerned the repossession of two trucks, not a dispute over property by business partners. *Booker*, 776 F.2d at 273-74. Likewise, *Lenz* involved the removal of a child's belongings from her house by the child's guardian ad litem. *Lenz*, 51 F.3d at 1543. The *Lenz* case is relevant to the extent it explains that the Fourth Amendment applies in a non-criminal context, but its facts are inapposite to those alleged in the Complaint. Thus, neither *Booker* nor *Lenz* clearly established law relevant to Potash's conduct.

Further, Potash's alleged conduct was not "so egregious that [he] must [have been] aware that he [was] acting illegally." *Thomas ex rel. Thomas*, 323 F.3d at 955. In the Fourth Amendment context, the plaintiff must demonstrate "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Id.* In *Thomas*, the Eleventh Circuit found that the "strip search" of elementary school students at school, without particularized suspicion, was unconstitutional but not sufficiently egregious to implicate this rule.[5] *Id.* Likewise, in this case as alleged, Potash's conduct, even if unconstitutional, was neither egregious nor obviously unlawful.

---

[5] As examples of "egregious" cases, the *Thomas* court gave the following string citation:

> *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (denying qualified immunity in an excessive force case in which defendant police officer "ordered and allowed his dog to attack and bite Plaintiff, threatened to kill Plaintiff when Plaintiff kicked the dog in an effort to resist the unprovoked attack, and let the dog attack Plaintiff for at least two minutes"), and *Smith v. Mattox*,127 F.3d 1416, 1419-20 (11th Cir. 1997) (declaring that conduct "barely" qualified for narrow exception where a police officer broke the arm of an allegedly docile arrestee who had admittedly previously been fleeing).

*Thomas ex rel. Thomas*, 323 F.3d at 955.

*See id.* Accordingly, Potash is entitled to qualified immunity from Plaintiffs' Fourth Amendment claim.

**II.     Due Process Clause**

Plaintiffs also allege that Potash's actions violated their right to due process under the Fourteenth Amendment. (Doc. No. 1 ¶ 31; Doc. No. 34 at 12-16.) The Court's earlier Order did not address this issue with respect to Potash specifically. (*See* Doc. No. 43 at 10-11.) However, upon expanding its analysis, the Court finds that this issue must necessarily be addressed to determine whether Potash is immune from suit.

Plaintiffs' "due process" claim against Potash is alleged in the same paragraph as their Fourth Amendment claim and presumably arises from the same set of facts.[6] (*See* Doc. No. 1 ¶ 31.) Given the factual context, Potash interprets the claim as a procedural due process claim. (Doc. No. 25 at 11.) That being the case, Potash argues that Plaintiffs' claim must be dismissed because they did not plead a lack of a post-deprivation remedy. (*Id.*) In their Response, Plaintiffs argue that an officer may be liable for violating the due process clause when he aids one party in a private dispute over property. (Doc. No. 34 at 14 (citing *Marcus*, 394 F.3d at 822).)

The case law regarding this type of procedural due process claim is closely related to the Fourth Amendment case law previously discussed. In fact, the courts discussing these concepts often conflate the two constitutional provisions and interchangeably cite the case law associated with

---

[6]     The Eleventh Circuit's opinion suggested that Plaintiffs' Complaint constituted a shotgun pleading and probably lacks the level of specificity required to plead a section 1983 action against an individual. *Trolley Boats*, slip op. at *6, 8. However, the scope of the remand is for this Court to expand its analysis of the "legal standard for qualified immunity . . . ." *Id.* Thus, it appears to be outside the scope of this limited remand for the Court to dismiss or strike the Complaint with instructions to replead in greater detail. *See id.*

each provision. *E.g.*, *Marcus*, 394 F.3d at 817-18 & n.3 (citing *Fuentes*, 407 U.S. at 67, a Fourteenth Amendment case, and *Soldal*, 506 U.S. at 61, a Fourth Amendment case). According to the case law, an officer may be liable for a due process violation when he actively assists one party in a property dispute to gain possession over the disputed property. *Cofield*, 90 F.3d at 471; *Marcus*, 394 F.3d at 819 (collecting cases from the various federal appellate courts). Such an intervention might consist of preventing one party from interfering with the other party's seizure of the property, *Barrett v. Harwood*, 189 F.3d 297, 302-03 (2d Cir.1999), or simply arriving at the scene with the seizing party to give the seizure a "cachet of legality," *Booker*, 776 F.2d at 274-74. In this case, Potash is alleged to have both arrived at the scene with Redman and to have actively removed Collins from the premises. Thus, the allegations in the Complaint, if true, fall into the type of conduct that is prohibited by the Fourteenth Amendment. *Barrett*, 189 F.3d at 302-03; *Booker*, 776 F.2d at 274.

Neverthless, an additional issue remains: whether a plaintiff must demonstrate the lack of a post-deprivation remedy to succeed in a procedural due process claim related to a police officer's intervention in a property dispute. The answer appears to be "yes." In *Tinney v. Shores*, 77 F.3d 378, 380-82 (11th Cir. 1996), the Eleventh Circuit held that the owners of a mobile home that had been padlocked by a sheriff for the benefit of a leinholder did not state a section 1983 claim because they failed to allege the lack of post-deprivation remedies. Further, the Eleventh Circuit has expressly stated in cases involving a police seizure of property that "a civil cause of action for wrongful conversion of personal property under state law is a sufficient post-deprivation remedy when it extends to unauthorized seizures of personal property by state officers." *Case v. Eslinger*, 555 F.3d 1317, 1331 (11th Cir. 2009) (citing *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991)).

Taken at face value, this language indicates that the post-deprivation remedy requirement applies in cases where state officers assist a private party in seizing property from another party. Accordingly, Plaintiffs' failure to allege that they lacked post-deprivation remedies precludes a procedural due process claim against Potash.

Moreover, under the allegations of the Complaint, Potash is entitled to qualified immunity unless he violated a clearly established right. The case law cited in Plaintiffs' Response to Potash's Motion is again insufficient to meet this standard. As an initial matter, Plaintiffs' citations to *Abbot v. Latshaw*, 164 F.3d 141, 149 (3d Cir. 1998), and *Marcus v. McCollum*, 394 F.3d 813, 822 (10th Cir. 2004), must be disregarded; cases from the Third and Tenth Circuits cannot clearly establish law in the Eleventh Circuit. Thus, Plaintiffs are left with *Fuentes v. Shevin*, 407 U.S. 67 (1972), and *Booker v. City of Atlanta*, 776 F.2d 272, 274 (11th Cir. 1985), both of which are distinguishable from the facts alleged in the Complaint. *Fuentes* concerned the constitutionality of Florida's and Pennsylvania's ex parte replevin statutes as applied to the repossession of consumer goods by the seller. *Fuentes*, 407 U.S. at 70-72. Likewise, as explained above, *Booker* involved the repossession of two trucks. *Booker*, 776 F.2d at 274. Similarly, the Eleventh Circuit's decision in *Colfield*, not cited by Plaintiffs, involved the repossession of an automobile. *Colfield*, 90 F.3d at 471-72. None of these cases concerned a police officer's intervention in a dispute between business partners claiming the right to possess the business' property. In other words, these cases did not give Potash "clear" notice that his alleged conduct was unlawful. *Thomas ex rel. Thomas*, 323 F.3d at 953-55. In addition, as explained before, Potash's conduct was not "so egregious that [he] must [have been] aware that he [was] acting illegally." *Id.* at 955

Accordingly, Potash is entitled to qualified immunity for Plaintiffs' Fourteenth Amendment claim.

**Conclusion**

The Court determines that Officer Potash is entitled to qualified immunity based on the facts alleged in the Complaint. The Clerk of Court is directed to transmit a certified copy of this Order to the Eleventh Circuit Court of Appeals with a cover letter explaining that this Order constitutes the Court's expanded legal analysis pursuant to the Eleventh Circuit's instructions in *Trolley Boats v. Amphibious Attractions, LLC*, Case No. 08-11043, slip op. at *1-9 (11th Cir. Jan. 28, 2009).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 31, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record